IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| Cal Stuart,<br><br>Plaintiff,<br><br>v.<br><br>Plaza Carolina Mall, LLC,<br><br>Defendant. | **Civil No. 24-1094(GMM)** |

## OPINION AND ORDER

Pending before the Court is Defendant's Plaza Carolina Mall, LLC's[1] ("Plaza Carolina") *Motion to Dismiss*.[2] (Docket No. 22). For the reasons stated below, the *Motion to Dismiss* is **GRANTED IN PART AND DENIED IN PART.**

### I.    FACTUAL AND PROCEDURAL BACKGROUND

On March 1, 2021, Plaintiff Cal Stuart ("Stuart") filed a *Complaint* asserting claims of negligence and gross negligence against Defendant. (Docket No. 1). Thereafter, on May 20, 2024, Stuart filed an *Amended Complaint*. (Docket No. 15). Stuart asserts diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) and adds an Americans with Disabilities Act ("ADA") claim. In his *Amended Complaint*, he alleges that he is disabled "having several foot [o]perations and amputations of all toes on his left foot." (Id.).

---

[1] Defendant clarifies that although the *Amended Complaint* names "Plaza Carolina Mall, LLC a/k/a Simon Premium Outlet", the proper named Defendant is Plaza Carolina, LLC.

[2] *Defendant Plaza Carolina Mall, L.P.'s Motion to Dismiss Complaint.*

Further, he posits that on March 6, 2023, he visited the Puerto Rico Premium Outlets ("Outlets") in Barceloneta, Puerto Rico and was riding a rover scooter when the scooter, "struck a large disrepair in the sidewalk and catapulted plaintiff is [sic] to the floor and wall striking his back, head, arms, and legs." (Id.). Stuart alleges that "[a]t issue is the negligence and gross negligence of the defendants by not repairing broken sidewalks[,] [a]s well as ADA legal violations on a continuing basis." (Id. at 2). As to Count One, Stuart seeks damages in the amount of one million dollars and alleges that "by not repairing the sidewalk defect, the defendant was negligent as specified under the law of the Commonwealth of Puerto Rico and violated the local laws of the town of Barceloneta." (Id. at 3). As to Count Two, Stuart seeks damages in the amount of two million dollars and posits that the "sidewalks, ramps, handrails, and other ADA accommodations [were not compliant]" and that "[t]he defendants were grossly negligent due to the fact they received multiple warnings and prior notice of customer accidents and ADA violations." (Id. at 4-5).

Further, although Stuart mentions Title I and II of the ADA, Count Three of the *Amended Complaint* appears to assert claims pursuant to Title III of ADA, 42 U.S.C. § 12182(a). Specifically, Stuart realleges that he is a disabled person "by virtue of toe amputations and surgery on the left foot" and that he utilizes a "manual Roover scooter wherein the left foot rests on a cushion

and plaintiff propels scooter with his right leg." (Id. at 6). He adds that when he visited the Outlets on March 6, 2023, accompanied by his wife and a friend, "[w]hile shopping the scooter struck a broken disrepaired [sic] [s]idewalk adjacent from the Ralph Lauren Polo store wherein plaintiff was seriously [i]njured after striking the ground." (Id. at 6-7). In addition, Stuart alleges that the Outlets "ha[ve] multiple violations against disabled persons that include not only customers but employees ss [sic] well have problems navigating sidewalks; there are very few ramps; bathroom facilities. [sic] are not easily accessible; a person in a wheelchair has one bathroom stall." (Id. at 7). Also, that "toilet seats are almost adjacent to the ground and reach bars are out of placxw [sic] among otherv [sic] violations; such as bathrooms without rail guards and improper height specifications". (Id.). Furthermore, Stuart alleges that in many stores of the Outlet where he is a "significant customer," "[m]any counters are not properly constructed for disabled customers to conduct business without injuring themselves" and that the stores "do not have bathroom facilities for handicapped customers and the common bathroom, are lack proper toilets, handrails, toilet accessories." (Id. at 8). As to these allegations, Stuart demands one million dollars in damages and fines.

On July 23, 2024, Plaza Carolina filed a *Motion to Dismiss*. (Docket No. 22). Therein, Plaza Carolina alleges that Stuart's ADA

Civil No. 24-1094(GMM)
Page -4-

cause of action should be dismissed since a plaintiff raising a Title III violation may only seek injunctive relief. *See* (id. at 5). Moreover, Plaza Carolina argues that Stuart lacks standing under Title III. *See* (id. at 9-10). In addition, Plaza Carolina posits that Stuart's *Amended Complaint* fails to allege that the Outlets have architectural barriers in violation of ADA. According to Plaza Carolina, Stuart merely identifies general areas of the Outlets and fails to specify how or why these areas do not comply with ADA. Also, Stuart does not allege whether the removal of any barriers at the Outlet is readily achievable, or whether Plaza Carolina can provide accommodations through alternative means. *See* (id. at 10).

As to the negligence claims, Plaza Carolina argues that the gross negligence claim fails as a matter of law because Puerto Rico tort law does not recognize a specific cause of action for intentional or grossly negligent acts. *See* (id. at 9). Also, Plaza Carolina posits that the negligence claim included in Count One of the *Amended Complaint* should be dismissed because Plaintiff fails to show with sufficient particularity that his claims exceed the jurisdictional threshold for this Court to exercise jurisdiction over this case. *See* (id. at 11). According to Plaza Carolina, the *Amended Complaint* is simply devoid of any allegations to allow the Court to ascertain whether Stuart's allegations amount to the sum

necessary to grant this Court jurisdiction. *See* (Docket No. 22 at 11).

On July 30, 2024, Stuart filed *Plaintiff, Cal Stuart's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint*. (Docket No. 23). Therein, Stuart argues that his claims of negligence and gross negligence are properly pleaded. As to the jurisdictional matter, Stuart posits that "the complaint clearly requests an ad donum clause in the amount of $2,000,000.00 on both causes of action". (Id. at 6). He adds that he attached "MRI imaging in his declaration showing multiple lumbar disc herniation[s], serious back injuries which includes stenosis which on occasion without trigger point steroid injections can lead to paralysis"; that a comprehensive sonogram of his shoulder shows significant loss and injury; that his physician Dr. López-López will provide a report illustrating his "significant lumbar damage"; and that his physician has assigned him a pain management doctor in Humacao to administer steroid injection. (Id. at 7). As to the ADA claim, Stuart argues that the Court should grant him leave to amend the *Amended Complaint* to include the ADA claims. *See* (id. at 9).

On August 19, 2024, Plaza Carolina filed *Reply in Support of Plaza Carolina Mall, L.P.'s Motion to Dismiss the Amended Complaint*. (Docket No. 26). Plaza Carolina argues that since Stuart did not oppose the assertion that the gross negligence claim fails

Civil No. 24-1094(GMM)
Page -6-

as a matter of law, this argument is considered waived. *See* (id.)

Also, Defendant restates that the negligence claim should be

dismissed because Stuart's *Amended Complaint* does not meet the

required jurisdictional amount and Plaintiff has failed to comply

with his burden to establish jurisdiction. *See* (id. at 2-3). As to

the ADA claim, Plaza Carolina reiterates that Plaintiff has failed

to sufficiently allege ADA violations and that allowing an

amendment to the complaint would be futile. *See* (id. at 3-4).

*Plaintiff, Cal Stuart's Reply Memorandum of Law in Further*

*Opposition to Defendant's Motion to Dismiss the Complaint* was filed

on August 28, 2024. (Docket No. 27). On November 15, 2024, Plaza

Carolina filed *Response to Plaintiff's Filing at ECF No. 27*.

(Docket No. 34).

## II. LEGAL STANDARD

A. Fed. R. Civ. 12(b)(1) and (6)

"When reviewing a motion to dismiss under Fed. R. Civ. P. 12

(b)(1) ("Rule 12(b)(1)"), it is important to establish that federal

courts are courts of limited jurisdiction that may only adjudicate

cases under the umbrage of the Constitution of the United States,

or cases expressly authorized by Congressional statute." Cruz

Strazarra v. Audio Visual Concepts, No. CV 08-2069 (ADC), 2009 WL

10720188, at *2 (D.P.R. Sept. 10, 2009).

Under Fed. R. Civ. P. 12(b)(1), a defendant may move to

dismiss a complaint for lack of subject matter jurisdiction. "[T]he

party invoking the jurisdiction of a federal court carries the burden of proving its existence." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (*quoting* Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993)) (internal quotation marks omitted); *see also* Mercado Arocho v. United States, 455 F.Supp.2d 15, 17 (D.P.R. 2006)("Plaintiff shall meet the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence.")(internal citations and quotations omitted). When confronted with such a motion, "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." Aversa v. United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996) (*citing* Murphy, 45 F.3d at 522). The Court, however, may widen its gaze and look beyond the pleadings to determine jurisdiction. *See* Martínez-Rivera v. Puerto Rico, 812 F.3d 69, 74 (1st Cir. 2016) (collecting cases that sustain the proposition that the Court can "rely on facts outside of the pleadings" to decide a Rule 12(b)(1) motion). In evaluating a motion to dismiss for lack of subject-matter jurisdiction, the court may look beyond the complaint and the motion to dismiss and consider extrinsic materials. *See* Dynamic Image Technologies, Inc. v. U.S., 221 F.3d 34, 37 (1st Cir. 2000).

Further, "[w]hen faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do

otherwise, should ordinarily decide the 12(b)(1) motion first."
Ne. Erectors Ass'n v. Sec'y of Lab., 62 F.3d 37, 39 (1st Cir.
1995).

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure ("Rule 12(b)(6)"), a defendant may move for the dismissal
of a complaint that fails to state a claim upon which relief can
be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a Rule
12(b)(6) motion, a complaint must allege sufficient facts to
support a plausible claim for relief. *See* Doe v. Stonehill College,
Inc., 55 F.4th 302, 316 (1st Cir. 2022); *see also* Bell Atlantic
Corp. v. Twombly, 550 U.S. 544, 545 (2007) (A plaintiff has the
"obligation to provide the grounds of his entitle[ment] to relief.
. ." (internal quotation marks omitted)); Ashcroft v. Iqbal, 556
U.S. 662 (2009).

"A claim is facially plausible if, after accepting as true
all non-conclusory factual allegations, the Court can reasonably
infer that the defendant is liable for the misconduct alleged."
Rodriguez-Wilson v. Banco Santander de Puerto Rico, 501 F.Supp.3d
53, 56 (D.P.R. 2020) (*citing* Ocasio–Hernández v. Fortuño–Burset*,*
640 F.3d 1, 12 (1st Cir. 2011). "Plausible, of course, means
something more than merely possible, and gauging a pleaded
situation's plausibility is a context-specific job that compels [a
court] to draw on [its] judicial experience and common sense."

Zenón v. Guzmán, 924 F.3d 611, 616 (1st Cir. 2019) (internal
quotation marks omitted).

    In reviewing a Rule 12(b)(6) motion to dismiss, a court
"accept[s] as true all well-pleaded facts in the complaint and
draw[s] all reasonable inferences in favor of the plaintiffs."
Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st
Cir. 2009) (citing Fitzgerald v. Harris, 549 F.3d 46, 52 (1st Cir.
2008)); see also In re Fin. Oversight & Mgmt. Bd. for Puerto Rico,
594 F.Supp.3d 433, 443 (D.P.R. 2019) (citing Miss. Pub. Employees'
Ret. Sys. v. Boston Scientific Corp., 523 F.3d 75, 85 (1st Cir.
2008)). However, the court does not "credit conclusory legal
allegations [or] factual allegations that are too meager, vague,
or conclusory to remove the possibility of relief from the realm
of mere conjecture." Douglas v. Hirshon, 63 F.4th 49, 55 (1st Cir.
2023); see also Schatz v. Republican State Leadership Committee,
669 F.3d 50, 55 (1st Cir. 2012) (Plainly, a court "ignore[s]
statements in the complaint that simply offer legal labels and
conclusions or merely rehash cause-of-action elements.").
Ultimately, a complaint's well-pled facts must nudge a claim
"across the line from conceivable to plausible." Ashcroft, 556
U.S. at 680 (citing Twombly, 550 U.S. at 570).

B.    *Pro Se* Litigants

    Courts "are solicitous of the obstacles that *pro se* litigants
face, and while such litigants are not exempt from procedural

rules, we hold *pro se* pleadings to less demanding standards than
those drafted by lawyers and endeavor, within reasonable limits,
to guard against the loss of *pro se* claims due to technical
defects." Dutil v. Murphy, 550 F.3d 154, 158 (1st Cir. 2008)
(*citing* Boivin v. Black, 225 F.3d 36, 43 (1st Cir. 2000)).
Therefore, "courts must be mindful of the challenges faced by *pro
se* litigants and construe their arguments liberally". Vieira v. De
Souza, 22 F.4th 304, 311 (1st Cir. 2022) (*quoting* McDonald v. Hall,
610 F.2d 16 (1st Cir. 1979)).

Although a *pro se* plaintiff's complaint is subject to "less
stringent standards than formal pleadings drafted by lawyers,"
Haines v. Kerner, 404 U.S. 519, 520 (1972), the complaint may not
consist entirely of "conclusory allegations." Young v. Wells
Fargo, N.A., 717 F.3d 224, 231 (1st Cir. 2013); *see also* Ferranti
v. Moran, 618 F.2d 888, 890 (1st Cir. 1980) (explaining that the
liberal standard applied to the pleadings of *pro se* plaintiffs "is
not to say that *pro se* plaintiffs are not required to plead basic
facts sufficient to state a claim.").

### III. APPLICABLE LAW AND ANALYSIS

Stuart's *Amended Complaint* includes three causes of action:
(1) a negligence claim; (2) a gross negligence claim; and (3) an
ADA claim. The first two claims are brough under diversity
jurisdiction. Plaza Carolina's *Motion to Dismiss* seeks dismissal
on two separate grounds: subject matter jurisdiction and failure

to state a claim. The Court will first address its jurisdiction. Plaza Carolina argues that the negligence claim should be dismissed because the Court lacks subject matter jurisdiction since Plaintiff allegedly fails to meet the jurisdictional amount in controversy requirement.

A.  <u>Jurisdictional Threshold Amount</u>

As a preliminary matter, "[t]he party invoking jurisdiction bears the burden of establishing the jurisdictional requirements." <u>Ins. Brokers West, Inc. v. Liquid Outcome, LLC</u>, 241 F.Supp.3d 339, 342 (D.R.I. 2017) (*citing* <u>Wal-Mart P.R., Inc. v. Zaragoza-Gomez</u>, 834 F.3d 110, 116 (1st Cir. 2016)). Jurisdiction based on diversity of citizenship between the parties requires the amount in controversy to "exceed the sum or value of $75,000, exclusive of interest and costs. . ." 28 U.S.C. § 1332. "When a district court considers a Rule 12(b)(1) motion, it must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." <u>Merlonghi v. U.S.</u>, 620 F.3d 50, 54 (1st Cir. 2010) (*citing* <u>Valentin v. Hosp. Bella Vista</u>, 254 F.3d 358, 363 (1st Cir. 2001)).

The *Amended Complaint* claims that Stuart suffered a sum of three million dollars in damages because of Plaza Carolina's alleged negligence and gross negligence. Ordinarily, the amount of damages asserted by the party invoking diversity jurisdiction "controls if the claim is apparently made in good faith." <u>Andersen</u>

v. Vagaro, Inc., 57 F.4th 11, 15 (1st Cir. 2023) (*citing* Stewart

v. Tupperware Corp., 356 F.3d 335, 338 (1st Cir. 2004)). Good faith

is demonstrated when a party shows "that to anyone familiar with

the applicable law this claim could objectively have been viewed

as worth more than the jurisdictional minimum." Abdel-Aleem v. OPK

Biotech LLC, 665 F.3d 38, 43 (1st Cir. 2012) (internal quotation

marks omitted). "While normally "a plaintiff's general allegation

that the dispute exceeds the jurisdictional minimum is sufficient

to support jurisdiction," when challenged, the plaintiff 'has the

burden of alleging with sufficient particularity facts indicating

that it is not a legal certainty that the claim involves less than

the jurisdictional amount.'" Andersen v. Vagaro, Inc., 57 F.4th at

15 (*quoting* Dep't of Recreation & Sports of P.R. v. World Boxing

Ass'n, 942 F.2d 84, 88 (1st Cir. 1991)); *see* St. Paul Mercury

Indemnity Co. v. Red Cab Co., 303 U.S. 283, 287 n.10, (1938)("It

is plaintiff's burden both to allege with sufficient particularity

the facts creating jurisdiction. . .and, if appropriately

challenged,. . .to support the allegation."); *see also* Lath v.

Camp, No. 17-CV-75-JL, 2018 WL 5017920 (D.N.H. Oct. 16, 2018)

(applying the same legal standard to *pro se* plaintiff).

A plaintiff may amend the complaint or submit additional

documentation, such as affidavits, medical reports, or

interrogatories to fend off a jurisdictional challenge. *See* Abdel-

Aleem v. OPK Biotech LLC, 665 F.3d at 42-43; McNutt v. Gen. Motors

Acceptance Corp. of Ind., 298 U.S. 178, 189, (1936) (holding that a plaintiff, when challenged, must provide "competent proof" supporting jurisdictional claim). The First Circuit has made clear that merely reiterating general descriptions of damages is insufficient, particularly when a plaintiff is put on notice of the complaint's deficiencies by a FRCP 12(b)(1) motion to dismiss. *See* Abdel-Aleem, 665 F.3d at 42-43 (affirming dismissal where plaintiff proffered only "bald statements and round numbers" in response to a jurisdictional challenge).

In this case, Plaza Carolina has contested the sufficiency of Plaintiff's pleading as to the jurisdictional amount, and the burden shifted back to Stuart to present "with 'sufficient particularity' facts that in some way support the contention that there is more than $75,000 at stake." Abdel-Aleem, 665 F.3d at 42. In response, Stuart alleges that "[t]he complaint clearly requests an ad donum clause in the amount of $2,000,000.00 on both causes of action." (Docket No. 23 at 6). Moreover, he alleges that he submitted a declaration under penalty of perjury to show that significant damages he has suffered. *See* (Id. at 7); *see also* (Docket No. 11). Further, Stuart argues that he provided an MRI image which illustrates "multiple lumbar disc herniation, serious back injuries which includes stenosis which on occasion without trigger point steroid injections can lead to paralysis," and that a comprehensive sonogram of his shoulder shows significant loss

and injury. *See* (id.) Both the sonogram and MRI readings are submitted on record. *See* (Docket No. 11-1 at 1-5). Also, Stuart asserts that his physician Dr. López-López will provide a report illustrating his "significant lumbar damage" and that his physician has assigned him a pain management doctor in Humacao to administer steroid injection. *See* (Docket No. 23 at 7). In addition, Stuart avers that he "sustained personal injuries far greater than the [C]ourt's jurisdiction." (Id.).

Here, Plaintiff indicates that he complied with the jurisdictional requirement since he claimed two million dollars in damages. "At the outset,. . .[the] demand for damages is not conclusive proof that "more than $75,000 [is] at stake." Andersen v. Vagaro, Inc., 57 F.4th at 16 *citing* Abdel-Aleem, 665 F.3d at 42-43. A review of the *Amendment Complaint* reflects that it is devoid of any factual allegations as to the nature or extent of any physical or emotional distress he may have suffered. Only in response to the jurisdictional challenge does he provide general and conclusory statements like "the court cannot possibly consider that the jurisdictional amount is less than $75,000" and "[t]he medical records submitted to the Court shows that plaintiff has endured great pain as well as future damages for medical cost and treatment." (Docket No. 23 at 6). Although he refers to medical records, the only related matter on record are one MRI and one sonogram reading. Yet, Stuart provided no substantiation for or

valuation of any of the damages he alleged in his *Amended Complaint*. *See* Andersen, 57 F.4th at 15-16; Abdel-Aleem, 665 F. 3d. at 43(concluding that the plaintiff had "not provided any facts or substantiation to show with sufficient particularity that his case is worth more than $75,000, let alone the claimed $1,000,000.").

The Court needs more than that. As the Supreme Court has explained, "[i]f [plaintiff's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed." McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936) (emphasis added).

At this stage, Stuart has already been put on notice twice as to his complaint's jurisdictional deficiencies, first by the Rule 12(b)(1) motion to dismiss filed on April 26, 2024, and most recently in the *Motion to Dismiss* pending before the Court. *See* (Docket Nos. 8; 22). However, even after amending his complaint and being provided the opportunity to correct the defects, they persist. Therefore, the Court finds that Stuart has not established with sufficient particularity that it is not a legal certainty that the claim involves less than $75,000 and must dismiss his

Civil No. 24-1094(GMM)
Page -16-

negligence claims included in Counts One and Two of the *Amended
Complaint* **without prejudice.**

B.    Title III ADA claim

As to the remaining Count Three, construed liberally, the
*Amended Complaint* appears to assert claims pursuant to Title III
of the ADA. Plaintiff seeks monetary damages in the amount of one
million dollars under the same facts related to the accident that
occurred at the Outlets on March 6, 2023. In addition, Stuart makes
a series of allegations regarding alleged architectural barriers
present at the Outlets including on sidewalks and in the
bathrooms.[3] Plaza Carolina seeks to dismiss the ADA claims arguing
that Stuart lacks standing to sue under Title III; that he
improperly seeks monetary damages; and that he fails to
sufficiently allege a plausible claim. (Docket No. 22 at 9-10).

When considering whether a complaint states a claim for which
relief may be granted, courts must assume the truth of all well-
plead facts and give the plaintiff the benefit of all reasonable

---

[3] Stuart's *Amended Complaint* alleges that the Outlets "ha[ve] multiple
violations against disabled persons that include not only customers but
employees ss [sic] well have problems navigating sidewalks; there are very few
ramps; bathroom facilities. [sic are not easily accessible; a person in a
wheelchair has one bathroom stall." (Docket No. 15 at 7). Also, that "toilet
seats are almost adjacent to the ground and reach bars are out of placxw [sic]
among otherv [sic] violations; such as bathrooms without rail guards and
improper height specifications". (Id.). Furthermore, Plaintiff alleges that in
many stores of the Outlet "[m]any counters are not properly constructed for
disabled customers to conduct business without injuring themselves" and that
the stores "do not have bathroom facilities for handicapped customers and the
common bathroom, are lack proper toilets, handrails, toilet accessories". (Id.
at 8).

inferences therefrom. *See* Ocasio-Hernandez v. Fortuno-Burset, 640
F.3d 1, 12 (1st Cir. 2011). Also, as previously highlighted, and
as held by the Supreme Court, "a *pro se* complaint, however
inartfully pleaded, must be held to less stringent standards than
formal pleadings drafted by lawyers". Erickson v. Pardus, 551 U.S.
89, 94 (2007) (*quoting* Estelle v. Gamble, 429 U.S. 97, 106 (1976)).
However, this cannot be taken to mean that *pro se* complaints are
held to no standard at all and the complaint may not consist
entirely of conclusory allegations. *See* Wells Fargo, N.A., 717
F.3d at 231.

Title III of the ADA provides that "[n]o individual shall be
discriminated against on the basis of disability in the full and
equal enjoyment of the goods, services, facilities, privileges,
advantages, or accommodations of any place of public accommodation
by any person who owns, leases (or leases to), or operates a public
accommodation." 42 U.S.C. § 12182(a). "To state a claim under the
ADA, a plaintiff must establish (1) [that] he or she is disabled
within the meaning of the ADA; (2) that the defendant[ ] own[s],
lease[s], or operate[s] a place of public accommodation; and (3)
that the defendant[ ] discriminated against the plaintiff within
the meaning of the ADA." Dudley v. Hannaford Bros. Co., 333 F.3d
299, 307 (1st Cir. 2003)); Marradi v. K&W Realty Inv. LLC, 212
F.Supp.3d 239, 245 (D. Mass. 2016).

In this case, Stuart appears to bring two separate claims under Title III. First, he claims damages against Plaza Carolina for the incident with his scooter allegedly provoked by an alleged faulty sidewalk at the Outlets. As to this first claim, it has been firmly established by the caselaw that "money damages are not an option for private parties suing under Title III of the ADA." Goodwin v. C.N.J., Inc., 436 F.3d 44, 50 (1st Cir. 2006); *see also* Dudley v. Hannaford Bros. Co., 333 F.3d 299, 304 (1st Cir. 2003) (the "compendium of remedies" afforded by section 12188(a)(1) includes injunctive relief, but not money damages). Several of our sister circuits have reached the same conclusion. *See, e.g.,* Powell v. Nat'l Bd. of Med. Exam''rs, 364 F.3d 79, 86 (2d Cir. 2004); Bowers v. NCAA, 346 F.3d 402, 433 (3d Cir. 2003); Am. Bus Ass'n v. Slater, 231 F.3d 1, 5 (D.C. Cir. 2000); Smith v. Wal-Mart Stores, Inc., 167 F.3d 286, 293 (6th Cir. 1999); Jairath v. Dyer, 154 F.3d 1280, 1283 n. 7 (11th Cir. 1998). This unbroken line of cases denotes that money damages are not an option for private parties suing under Title III of the ADA.

Moreover, the ADA addresses discrimination and seeks to ensure accessibility of public accommodations for disabled persons; not to establish safety standards for walkways. *See* 42 U.S.C. § 12182(a). Indeed, Title III of the statute, governing public accommodations and commercial facilities, provides no cause of action for damages in tort or under any other theory. *See*

Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1120 (9th Cir. 2000). Although the ADA regulations require a place of public accommodation to "remove architectural barriers in existing facilities. . .where such removal is readily achievable," 28 C.F.R. § 36.304, the regulation does not seem to encompass sidewalk defects as "architectural barriers". The examples given in the regulation include "installing ramps" and "making curb cuts in sidewalks and entrances." *See* Vansteenkiste v. Lakeside Mall, LLC, No. 12-CV-15055, 2014 WL 2744172, at *7 (E.D. Mich. June 17, 2014).

Consequently, Stuart's ADA claim as to damages related to the sidewalk accident are **dismissed with prejudice.**

As to Stuart's ADA claim for alleged violations relating to sidewalks, ramps, counters, and bathroom facilities, he may be able to state a Title III claim if he can show that Plaza Carolina's actions were attributable to disability-based discrimination, or if he can demonstrate unequal treatment between disabled and non-disabled people. Yet, Stuart's *Amended Complaint* does not include adequate facts to substantiate such a claim. The *Amended Complaint* contains only general conclusory allegations as to the presence of architectural barriers.

Therefore, the Court concludes that, even under the liberal pleading requirements for *pro se* plaintiffs, Stuart has not alleged sufficient facts to survive Plaza Carolina's *Motion to Dismiss* his ADA claim. Nevertheless, given the early pleading stage and because

Civil No. 24-1094(GMM)
Page -20-

Stuart is representing himself and may not have understood what he needed to include in his complaint, the Court will grant him leave to amend his *Amended Complaint* to assert additional facts to support his claim. Granting leave to amend the *Amended Complaint* will facilitate the adjudication on the merits of Stuart's claim and is in the best interest of the parties pursuant Federal Civil Rule 15(a). *See* <u>Quality Refrigerated Servs., Inc. v. City of Spencer</u>, 908 F. Supp. 1471, 1488 n.11 (N.D. Iowa 1995) (noting that the Rule's purpose is to provide maximum opportunity for each claim to be decided on its merits).

In amending his pleadings, Stuart shall identify his disability and allege sufficient facts to support a plausible claim under the ADA. Particularly, he must explain what Plaza Carolina did or failed to do that allegedly violated his rights under the ADA.

Stuart is hereby put on notice that should he prevail on the ADA claim, his remedies are limited to injunctive relief and those set forth in 42 U.S.C. § 2000a-3(a), as specified by 42 U.S.C. § 12188(a)(1).

Lastly, the Court understands that Plaintiff should not continue proceeding *pro se*. Stuart could greatly benefit from legal representation in amending his *Amended Complaint.* Likewise, if Stuart's claims survive the pleading stage, legal representation will be of great help during later stages of the litigation. Hence,

**Civil No. 24-1094(GMM)**
**Page -21-**

Stuart is hereby ordered to obtain legal representation and appear through an attorney **by January 10, 2025**. The amended complaint shall be filed **by January 31, 2025**.

### IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** the Plaza Carolina's *Motion to Dismiss*. Counts One and Two of the *Amended Complaint* are **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, December 6, 2024.


s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE